IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 1:15-cv-01589 |
| v. | ) | |
| | ) | CONSENT DECREE |
| | ) | |
| Tractor Supply Company, Inc., and | ) | |
| Tractor Supply Company of Texas, L.P. | ) | |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

## TABLE OF CONTENTS

I. JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II. APPLICABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
III. DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
IV. CIVIL PENALTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
V. COMPLIANCE REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
VI. REPORTING REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
VII. STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
VIII. FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
IX. DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
X. INFORMATION COLLECTION AND RETENTION . . . . . . . . . . . . . . . . . . . . 22
XI. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS . . . . . . . . . . . . . . 24
XII. COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
XIII. NOTICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
XIV. EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
XV. RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
XVI. MODIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
XVIII. TERMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
XVIII. PUBLIC PARTICIPATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
XIX. SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
XX. INTEGRATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
XXI. FINAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
XXII. APPENDICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint in this action concurrently with this Consent Decree alleging that Tractor Supply Company, Inc. and Tractor Supply Company of Texas, L.P. (collectively "Defendants" or "TSC"), violated Sections 203 and 213 of the Clean Air Act ("Act"), 42 U.S.C. §§ 7401 et seq.

The Complaint alleges that Defendants imported and introduced into commerce in the United States 28,265 recreational vehicles and small nonroad spark-ignition engines produced outside the United States during model years 2006 through 2009 that did not meet the requirements of Title II of the Act and the regulations promulgated thereunder, in violation of Sections 203(a)(1) and 213(d) of the Act and 40 C.F.R. Parts 1051 and 90 pertaining to Certificates of Conformity and emissions control information labeling. The Complaint further alleges that Defendants failed to provide complete and accurate information in response to a request by EPA pursuant to Section 208 of the Act, in violation of Section 203(a)(2) of the Act.

Defendants do not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

I. JURISDICTION AND VENUE

1

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Sections 204, 205, and 213 of the Act, 42 U.S.C. §§ 7523, 7524, and 7547, and over the Parties.  Venue lies in this District pursuant to Section 205 of the Act, 42 U.S.C. § 7524 because this District is the location of the Administrator's principal place of business.  For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree and any such action and over each Defendant and consent to venue in this judicial district.

2.      For purposes of this Consent Decree, Defendants agree that the Complaint states claims upon which relief may be granted pursuant to Section(s) 204, 205, and 213 of the Act, 42 U.S.C. §§ 7524, 7525, and 7547.

## II.  APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the United States, and upon Defendants and any successors, assigns, or other entities or persons otherwise bound by law.

4.      Tractor Supply Company, Inc. and Tractor Supply Company of Texas, L.P. are jointly and severally liable for the obligations imposed by this Consent Decree.

5.      Defendants shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties materially include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree.  Defendants shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

2

6.     In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III. DEFINITIONS

7.     Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.     "Complaint" shall mean the complaint filed by the United States in this action;

b.     "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXII);

c.     "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

d.     "Defendants" or "TSC" shall mean Tractor Supply Company, Inc., and Tractor Supply Company of Texas, L.P.;

e.     "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

f,     "EPA Engine Family" means a group of engines, as specified in 40 C.F.R. §§ 90.116, 1051.230, and 1054.230;

g.     "Effective Date" shall have the definition provided in Section XIV.

3

h.      "Group I" SVE means any SVE for which TSC is the importer of record;

i.      "Group II" means any SVE that is not a Group I SVE and bears any TSC private label (a brand name trademarked by TSC, such as "Huskee" or "County Line");

j.      "Group III" SVE means any SVE that is not a Group I or Group II SVE;

k.      "Nonconforming Equipment" shall mean the vehicles and engines identified for export or destruction pursuant to Paragraph 20.c of Appendix A;

l.      "Paragraph" shall mean a portion of this Decree identified by an arabic numeral;

m.      "Permanently Destroy" (or "Permanent Destruction") means to destroy a vehicle or engine using one of the following methods:

(1) (a) Remove (and dispose or recycle appropriately) the engine oil from the crankcase, replace the oil with a 40 percent solution of sodium silicate ($SiO_2/Na_2O$ with a weight ratio of 3.0 or greater); (b) Run the engine at a low speed (approximately 2000 rpm) until the engine stops; (c) After allowing the engine to cool for an hour, try to start the engine.  If the vehicle or engine contains a battery and that battery is charged and the engine will not operate at idle, the procedure is complete; (d) If the engine starts, run the engine at a low speed (approximately 2000 rpm) until the engine stops and then try to start the engine again after allowing the engine to cool for an hour.  Repeat step (d) in this process until the engine will not operate; (e) Remove and dispose of any remaining fuel in accordance with applicable law.

4

(2)  Remove (and dispose appropriately) all oil and gasoline.  Using a drill bit of no less than 3/8 inch, (a) drill a hole through the lower crankcase of the engine so that it no longer retains oil; (b) drill a hole through the cylinder head into the combustion chamber; (c) drill a hole through the cylinder or cylinder block through the cylinder liner; and (d) drill a hole through the bore of the carburetor, rendering all parts useless.

(3)  Compact or crush the vehicle, engine or equipment and all of its parts or components to render them useless.

n.      "Parties" shall mean the United States and Defendants;

o.      "Section" shall mean a portion of this Decree identified by a roman numeral;

p.      "Subject Vehicles and Engines" or "SVE" means all EPA-regulated, recreational vehicles (including all-terrain vehicles, off-highway motorcycles, and snowmobiles) and small spark-ignition engines, whether stand-alone or contained in equipment, imported, purchased or distributed by or on behalf of Tractor Supply Company (TSC). However, five or fewer vehicles or engines (per Vehicle or Engine Model) that are imported in compliance with any of the exemptions listed under 40 C.F.R. Parts 85, Subpart R, Part 90, Subpart J, Part 1054, Subpart G, or Part 1068, Subpart C, are not included;

q.      "Supplier" means any entity that sells, distributes, or provides any SVE to TSC;

r.      "United States" shall mean the United States of America, acting on behalf of EPA;

5

s.     "Vehicle or Engine Model" means any set of SVEs that is certified in the same EPA Engine Family, built by the same Manufacturer in the same Model Year (as designated by the Manufacturer), and with the same vehicle or engine mass, transmission type, displacement, and power (i.e., HP or kW);

t.     "Vehicle or Engine Product" means any set of Group II or Group III SVEs that is built by the same Manufacturer with the same vehicle or engine mass, transmission type, displacement, and power (i.e., HP or kW) and delivered in the same calendar year, or inspected in connection with delivery made or to be made in the calendar year following the inspection, by the same Supplier.

## IV. CIVIL PENALTY

8.     Within 30 Days after the Effective Date of this Consent Decree, Defendants shall pay the sum of $775,000 as a civil penalty, together with interest accruing from the date of lodging, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.

9.     Defendants shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendant, following entry of the Consent Decree, by the Financial Litigation Unit (FLU) of the U.S. Attorney's Office for the District of the District of Columbia.  At the time of payment, Defendant shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States v. Tractor Supply Company, Inc., et al.* and shall reference the CDCS number (provided by the FLU), the civil action number, and DOJ case number 90-5-2-1-10153, to the United States in accordance with Section XIII of this Decree (Notices); and by email to acctsreceivable.CINWD@epa.gov; or by mail to:

6

EPA Cincinnati Finance Office
26 Martin Luther King Drive
Cincinnati, Ohio 45268

10.    Defendants shall not deduct any penalties paid under this Decree pursuant to this

Section or Section VII (Stipulated Penalties) in calculating their federal income taxes.

## V.  COMPLIANCE REQUIREMENTS

11.    Corporate Vehicle and Engine Compliance Group.  Not later than the Effective

Date or ninety (90) days after the date of lodging of this Consent Decree (whichever is later),

Defendants shall establish a Corporate Vehicle and Engine Compliance Group to ensure the

effective implementation of this Consent Decree.  The Corporate Vehicle and Engine

Compliance Group shall consist of a corporate officer from each Defendant, a designated

corporate compliance representative responsible for implementation of the Consent Decree,

TSC's Corporate Compliance Evaluator (as that term is used in the Checklists attached to

Appendix A), and selected employees of Defendants responsible for the implementation of

specific Consent Decree requirements.  The Corporate Vehicle and Engine Compliance Group

shall be responsible for implementation of the Consent Decree and shall review and report

compliance with the Consent Decree in accordance with Section VI hereof.

12.    Destruction or Export of Non-Compliant Vehicles and Engines.

a.    Vehicles and engines required to be exported or destroyed pursuant to Paragraph

20.c of Appendix A shall be Permanently Destroyed or exported to a country outside the United

States, Canada, and Mexico in accordance with the requirements of this Paragraph and Paragraph

20.c of Appendix A.

7

b.      Defendants shall maintain, or ensure that the Supplier of the Nonconforming Equipment maintains, custody and control of Nonconforming Equipment in the condition it was in upon receipt by Defendants until it is Permanently Destroyed or shipped for export.

c.      Defendants shall retain, or ensure that the Supplier of the Nonconforming Equipment retains, all customary transactional documents relating to their export or Permanent Destruction of Nonconforming Equipment.  Defendants shall provide such documents to EPA upon request.

d.      Defendants shall inform, or ensure that the Supplier of the Nonconforming Equipment informs, each entity that purchases or receives Nonconforming Equipment from them (or from any entity acting as an agent of, or on behalf of, Defendants), in writing, that the equipment does not meet U.S. EPA regulatory requirements and may not be sold in the United States, Canada, or Mexico.  Defendants shall prominently label, or ensure that the Supplier of the Nonconforming Equipment prominently labels, all shipping pallets and individual boxes that hold Nonconforming Equipment as "FOR EXPORT OUTSIDE THE UNITED STATES, CANADA, AND MEXICO.  NOT LAWFUL FOR SALE IN THE UNITED STATES, CANADA, OR MEXICO."

e.      With the first Semi-Annual Progress Report submitted pursuant to Section VI (Reporting Requirements) after completion of the requirements of this Paragraph with respect to any Nonconforming Equipment, Defendants shall submit to EPA a Completion Report, certifying completion of the requirements of this Paragraph, whether by Defendants or the Supplier of the Nonconforming Equipment.  In this Completion Report, Defendants shall include, and certify the truth and accuracy of, each of the following:

8

i.  A list of all vehicles and engines exported or Permanently Destroyed, including the model names and numbers, the EPA Engine Family, the entry numbers (if available), and, for vehicles only, the vehicle identification numbers.

ii.  The name and contact information for any freight forwarding company or exporter used to facilitate the exportation of any vehicles or engines, and for the entity used to facilitate the Permanent Destruction of any vehicles or engines; and

iii.  The name and contact information for the customer or recipient of the vehicles and engines.

13.  <u>Corporate Compliance Plan</u>.  Beginning no later than the Effective Date of this Consent Decree or 90 days after the date of lodging of this Consent Decree, whichever is later, Defendants shall implement the Corporate Compliance Plan set forth in Appendix A.

14.  <u>Required Emissions Mitigation</u>.  Defendants shall implement the Emissions Mitigation Project set forth in Appendix B, and shall achieve  emissions mitigation of 23.5 tons of HC+NOx and 12.2 tons of CO (the "Required Emissions Mitigation"), within two (2) years from the Effective Date.

15.  <u>Submission of Deliverables</u>.  Defendants shall submit any plan, report, or other item that they are required to submit pursuant to this Consent Decree to EPA.  Where the Consent Decree or any Appendix specifies that Defendants will obtain EPA pre-approval of, or submit for EPA approval, a plan, report, request for approval of a laboratory for purposes of emissions or catalyst testing, or other item, EPA shall either approve the submission or identify any deficiencies that must be cured.  EPA may provide written comments on any other submission identifying deficiencies that must be cured.  Within thirty (30) Days of receiving EPA's written comments, Defendant shall either: (i) revise the submission consistent with EPA's

9

written comments and provide the submission for EPA final approval, or (ii) submit the matter for dispute resolution under Section IX of this Consent Decree.

16.     Any stipulated penalties applicable to the original submission, as provided in Section VII of this Decree, shall accrue during the thirty-day period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendants' obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

## VI. REPORTING REQUIREMENTS

17.     Beginning 30 Days after the end of the second full calendar quarter following the Effective Date of this Consent Decree and continuing on a semi-annual basis on January 31 and July 31 of each year until termination of this Consent Decree, and in addition to any other express reporting requirement in this Consent Decree, Defendants shall submit a Semi-Annual Progress Report for approval to EPA. Each Progress Report shall contain all information necessary to determine compliance and noncompliance with this Consent Decree during the calendar semi-annual period since the last Semi-Annual Progress Report (or since the Effective Date, for the first report), including but not limited to:

    a.     The information required to be reported in the Semi-Annual Progress Report in accordance with Paragraph 12.e of this Consent Decree and Appendices B and C.

    b.     A description of any violation of the requirements of this Consent Decree (including all Appendices), including an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to resolve and/or mitigate the violation and to

prevent future similar violations. If the cause of a violation cannot be fully explained at the time the report is due, Defendants shall so state in the report and Defendants shall promptly and diligently investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendants become aware of the cause of the violation.

        c.      Nothing in this Paragraph or the following Paragraph relieves Defendants of their obligation to provide the notice required by Section IX of this Consent Decree (Force Majeure).

18.      Whenever any violation of this Consent Decree or any other event affecting a Defendant's performance under this Decree, may pose an immediate threat to the public health or welfare or the environment, Defendants shall notify EPA orally or by email as soon as possible, but no later than 24 hours after either Defendant first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

19.      All reports shall be submitted to the persons designated in Section XIII of this Consent Decree (Notices).

20.      Each report submitted by Defendants under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information is other than true, accurate, and complete. I am aware that there are significant

11

penalties for submitting false information, including the possibility
of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where

compliance would be impractical.

21.     The reporting requirements of this Consent Decree do not relieve Defendants of

any reporting obligations required by the Clean Air Act or implementing regulations, or by any

other federal, state, or local law, regulation, permit, or other requirement.

22.     Any information provided pursuant to this Consent Decree may be used by the

United States in any proceeding to enforce the provisions of this Consent Decree and as

otherwise permitted by law.

## VII.  STIPULATED PENALTIES

23.     Defendants shall be liable for stipulated penalties to the United States for

violations of this Consent Decree as specified below, unless excused under Section VIII (Force

Majeure).  A violation includes failing to perform any obligation required by the terms of this

Decree, including any work plan or schedule approved under this Decree, according to all

applicable requirements of this Decree and within the specified time schedules established by or

approved under this Decree.  Stipulated penalties, whether per Day or per unit, shall accrue for

each violation of a requirement, unless otherwise provided herein.

24.     Late Payment of Civil Penalty. For failure to pay the Civil Penalty required by

Paragraph 8 of this Decree when due: $1,500 per Day during the first 15 days, and $3,500 per

Day thereafter.

25.     Compliance Violations

      a.      For failure to conduct physical inspections, or to conduct or obtain the results of emissions testing or catalyst inspections, in accordance with the timing required in Appendix A, Paragraphs 17.b and 17.c.: $1,500 per Day; provided, however, that if Defendants accept delivery without yet having performed a physical inspection in accordance with the other requirements of Appendix A, Paragraph 17.b, or without yet having performed emissions testing or catalyst inspections in accordance with the other requirements of Appendix A, Paragraph 17.c, then Defendants shall be subject to stipulated penalties under Paragraph 25.c rather than this Paragraph.

      b.      For failure to conduct physical inspections, or to conduct or obtain the results of emissions testing or catalyst inspections post-import in accordance with the timing requirements of Appendix A, Paragraph 18:  $1,750 per Day; provided, however, that if Defendants import additional SVEs of the same Vehicle or Engine Model without yet having conducted the most recent required post-import physical inspections (i.e., the inspections required not later than June 30 for imports between January 1 and June 30 and not later than December 31 for imports between July 1 and December 31), or conducted or obtained the results of the most recent required post-import emissions testing or catalyst inspections, of those SVEs' Vehicle or Engine Model in accordance with the other requirements of Appendix A, Paragraph 18, then Defendants shall be subject to stipulated penalties under Paragraph 25.c with respect to those additional SVEs as well as daily penalties under this Paragraph 25.b with respect to the late inspection and/or testing..

      c.      For failure to meet any requirement of Appendix A, Paragraph 19 prior to importing or accepting delivery of any SVE: $100 per Group III SVE, $500 per Group II SVE, and $1,000 per Group I SVE.

13

       d.      For failure to retain the inspected unit (if required), or to timely cease importation, acceptance of delivery, sale, or distribution of any SVE of an affected Vehicle or Engine Model in accordance with Appendix A, Paragraphs 20.b, 20.c and 21: $500 per Group III SVE, $1,000 per Group II SVE, and $1,500 per Group I SVE.

       e.      For failure to make required notifications in accordance with Appendix A, Paragraphs 20 or 21, for each notification not made: $1,000 per Day for the first 15 Days, $1,250 per Day for the next 15 Days, and $1,500 for each Day thereafter; provided, however, that failure to notify customers pursuant to Appendix A, Paragraph 20.e, shall be treated as a single failure (per day) to make notification regardless of the number of customers as to whom notification was required, and provided that the total stipulated penalty for any set of required notices under Appendix A, Paragraph 20.a (i.e., the notices required to be sent to EPA, the Supplier, the Manufacturer, and the Certificate holder as a result of one of the events listed in Paragraph 20), shall not exceed $37,500, so long as all notices are provided to the required recipients prior to or (as to EPA) as part of the next Semi-Annual Progress Report following the date notification was required to be made.

       f.      For failure to conduct, or to timely submit the results of, emissions testing or catalyst testing in accordance with Appendix A, Paragraph 23: $750 per Day for the first 30 Days, $1,000 per Day for the next 30 Days, and $1,500 per Day for each Day thereafter.

       g.      For failure to timely export or destroy, or to ensure that the Supplier of the Nonconforming Equipment timely exports or destroys, Nonconforming Equipment in accordance with all of the requirements of Paragraph 12.a-d of this Decree or, when applicable, Appendix A, Paragraphs 20 and 21: $1,000 per SVE.

14

h.    For failure to timely secure the Required Emissions Mitigation (tons) in accordance with Paragraph 14 of this Consent Decree and Appendix B: $2,000 per ton of HC+NOx mitigation not timely achieved and $1,500 per ton of CO mitigation not timely achieved.

i.    For failure to comply with any other term or requirement of the Consent Decree, including the Corporate Compliance Plan set forth in Appendix A to this Decree and the Emissions Mitigation Projects set forth in Appendix B to this Decree: $5,000 per violation.

26.    <u>Reporting and Recordkeeping Requirements.</u>

a.    For failure to timely submit any Semi-Annual Report in accordance with Paragraph 17 of this Decree, or for submission of a Semi-Annual Report that is so deficient as to constitute a material breach: $1,250 per day for the first 15 days; $2,000 for the next 15 Days, and $2,750 for each Day thereafter.

b.    For submission of an inaccurate Semi-Annual Report leading to a demand for stipulated penalties arising from the inaccurate information: $5,000 per inaccuracy leading to a demand for stipulated penalties.

c.    For failure to timely cure, to EPA's satisfaction, any deficiency in any submission, including but not limited to the absence of required information or attachments, within thirty days of written notification by EPA of such deficiency, pursuant to Paragraph 15 of this Consent Decree: for each deficiency identified by EPA and not timely cured, $750 per day for the first 30 days, $1,000 per Day for the next 30 days, and $1,250 per Day thereafter.

d.    For failure to timely create, maintain, provide, or submit a complete and accurate other record, report, test plan, or other document (or copy thereof, as applicable) as

15

required by this Consent Decree: $1,000 per day for the first 30 days, $1,250 per day for the next 30 days, and $1,750 per Day thereafter.

27.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

28.     Defendants shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.  The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

29.     Stipulated penalties shall continue to accrue as provided in Paragraph 27, during any Dispute Resolution, but need not be paid until the following:

   a.     If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

   b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

   c.     If any Party appeals the District Court's decision, Defendants shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

30.     Defendants shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 9, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

31.     If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

32.     The payment of penalties and interest, if any, shall not alter in any way Defendant's obligation to complete the performance of the requirements of this Consent Decree. Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section XI of this Consent Decree (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Defendants' violation of this Decree or applicable law, including but not limited to an action against Defendants for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt.  However, the amount of any statutory penalty assessed in a final administrative or judicial order or judgment for a violation of the Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## VIII.  FORCE MAJEURE

33.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or

17

of Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation.  The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible.  "Force Majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

34.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendants shall provide notice orally or by email to EPA within five business days of when either Defendant first knew that the event might cause a delay.  Within seven business days thereafter, Defendants shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Defendants shall be deemed to know of any circumstance of which

18

either Defendant, any entity controlled by either Defendant, or either Defendants' contractors performing obligations on behalf of Defendants under the Decree knew or should have known.

35. If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

36. If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendants in writing of its decision.

37. If Defendants elect to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), they shall do so no later than fifteen Days after receipt of EPA's notice. In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendants complied with the requirements of Paragraphs 33 and 34 above. If Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## IX. DISPUTE RESOLUTION

38. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising

19

under or with respect to this Consent Decree. Defendants' failure to seek resolution of a dispute under this Section shall preclude Defendants from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendants arising under this Decree.

39.     Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendants send the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 10 Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures as set forth below.

40.     Formal Dispute Resolution.  Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by delivering in accordance with Section XIII (Notices) to the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

41.     The United States shall serve its Statement of Position within 60 Days of receipt of Defendants' Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of

20

Position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

42.     Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIII of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within 10 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

43.     The United States shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court.  Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

44.     <u>Standard of Review</u>

a.      <u>Disputes Concerning Matters Accorded Record Review</u>.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 40 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendants shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.      <u>Other Disputes</u>.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 40, Defendants shall bear the burden of proving that

21

their actions were in compliance with this Consent Decree; or, if the dispute concerns the interpretation of this Consent Decree, Defendant shall bear the burden of demonstrating that their interpretation is consistent with the language of this Consent Decree and better furthers its objectives than the position advanced by the United States.

45.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 29.  If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## X. INFORMATION COLLECTION AND RETENTION

46.     The United States and its representatives, including but not limited to its employees, attorneys, contractors, and consultants, shall have the right of entry into any facility owned, controlled, or used by Defendants or their contractors to implement the requirements of this Consent Decree, at all reasonable times, upon presentation of credentials, to:

      a.     monitor the progress of activities required under this Consent Decree;

      b.     verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

      c.     Inspect all products regulated under Title II of the Act imported, purchased or distributed by or on behalf of either Defendant;

      d.     inspect emissions and/or catalyst testing facilities or observe emissions and/or catalyst testing;

e.      obtain documentary and analytical evidence, including photographs and similar documents and data; and

f.      obtain any information that may be useful to assess Defendants' compliance with this Consent Decree or Title II of the Act.

47.    Until five years after the termination of this Consent Decree, Defendants shall retain, and shall instruct their contractors and agents performing requirements under this Decree to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in their own or their contractors' or agents' possession or control, or that come into their own or their contractors' or agents' possession or control, and that relate in any manner to Defendants' performance of their obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time between the Effective Date of this Consent Decree and the end of this information-retention period, upon request by the United States, Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

48.    At the conclusion of the information-retention period provided in the preceding Paragraph, Defendants shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendants shall deliver any such documents, records, or other information to EPA.

49.    Defendants may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendants assert such a privilege, they shall provide the following: (1) the title of the

23

document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendants.  However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

50.    Defendants may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendants seek to protect as CBI, Defendants shall follow the procedures set forth in 40 C.F.R. Part 2.

51.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XI.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

52.    This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging.

53.    The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 52.

24

54.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to Defendants' violations, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 52 of this Section.

55.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, or with any other provisions of federal, State, or local laws, regulations, or permits.

56.     This Consent Decree does not limit or affect the rights of Defendants or of the United States against any third parties not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

57.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

25

XII.  <u>COSTS</u>

58.       The Parties shall bear their own costs of this action, including attorneys' fees,

except that the United States shall be entitled to collect the costs (including attorneys' fees)

incurred in any action necessary to collect any portion of the civil penalty or any stipulated

penalties due but not paid by Defendants.

XIII.  <u>NOTICES</u>

59.       Unless otherwise specified herein or otherwise requested, whenever notifications,

submissions, or communications are required by this Consent Decree, they shall be made by

email and addressed as follows:

<u>To the United States</u>:

EES Case Management Unit
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C.  20044-7611
eescdcopy.enrd@usdoj.gov
Re: DOJ No. 90-5-2-1-10153

And to EPA as set forth below

<u>To EPA</u>:

Meetu Kaul, Esq.
U.S. Environmental Protection Agency
Air Enforcement Division (2242A)
1200 Pennsylvania Ave., NW
Washington, D.C. 20460
202-564-5472
kaul.meetu@epa.gov

<u>To Defendant(s)</u>:

Ben Parrish
Senior Vice President and General Counsel
Tractor Supply Company

26

200 Powell Place
Brentwood, TN 37027
bparrish@tractorsupply.com

*with a copy to*

Michael C. Ford
Snell & Wilmer
One Arizona Center
400 East Van Buren Street
Suite 1900
Phoenix, AZ 85004-2202
mford@swlaw.com

60.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

61.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing or emailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIV.  EFFECTIVE DATE

62.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XV.  RETENTION OF JURISDICTION

63.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections IX and XVI, or effectuating or enforcing compliance with the terms of this Decree.

## XVI.  MODIFICATION

27

64.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

65.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section IX of this Decree (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 44, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII.  TERMINATION

66.     Defendants may, at any time after five years from the Effective Date of this Consent Decree, serve upon the United States, together with all necessary supporting documentation, a Request for Termination, stating that they have:

    a.     Made the payments required by Section IV and any accrued interest imposed by this Consent Decree;

    b.     Paid in full any stipulated penalties imposed by this Consent Decree; and

    c.     Completed all other applicable requirements of this Consent Decree.

67.     Following receipt by the United States of Defendants' Request for Termination, the United States and Defendants shall confer informally concerning the Request and any disagreement that they may have as to whether Defendants have satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

68.     If the United States does not agree that the Decree may be terminated, Defendants may invoke Dispute Resolution under Section IX of this Decree.  However, Defendants shall not seek Dispute Resolution of any dispute regarding termination, under Paragraph 40 of Section IX, until 90 days after service of its Request for Termination.

## XVIII.  PUBLIC PARTICIPATION

69.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R.§ 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree.

## XIX.  SIGNATORIES/SERVICE

70.     Each undersigned representative of Defendants and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

71.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

29

## XX.  INTEGRATION

72.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supercedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Except as provided in Paragraph 74, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents.

## XXI.  FINAL JUDGMENT

73.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendants.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

## XXII.  APPENDICES

74.    The following appendices are attached to and part of this Consent Decree:

   "Appendix A" is the Corporate Compliance Plan

   "Appendix B" is the "Emissions Mitigation Project"

   "Appendix C" is the "Emissions Testing Guidelines"


Dated and entered this 19th day of January, 2016.


_____
UNITED STATES DISTRICT JUDGE
District of the District of Columbia

*Signature Page to Consent Decree in:*
*United States v. Tractor Supply Company, Inc., et al.*

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

9/29/15
Date

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7415
Washington, DC 20044-7415
(202) 514-2718

9/29/15
Date

ERIC D. ALBERT
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
(202) 514-2800 (direct)
(202) 514-4180 (fax)
eric.albert@usdoj.gov

*Signature Page to Consent Decree in:*
*United States v. Tractor Supply Company, Inc., et al.*

for SUSAN SHINKMAN                                    9/25/15
Office of Civil Enforcement                           Date
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., NW
Washington, DC 20460


PHILLIP A. BROOKS                                     9/25/15
Director, Air Enforcement Division                    Date
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., NW
Washington, DC 20460


MEETU KAUL                                            9/21/15
Air Enforcement Division                              Date
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., NW
Washington, DC 20460

*Signature Page to Consent Decree in:*
*United States v. Tractor Supply Company, Inc., et al.*

**FOR DEFENDANT TRACTOR SUPPLY COMPANY, INC.**

9-11-2015
Date

Gregory A. Sandfort
President & Chief Executive Officer
Tractor Supply Company
5401 Virginia Way
Brentwood, TN 37027
(615) 440-4000

34

*Signature Page to Consent Decree in:*
*United States v. Tractor Supply Company, Inc., et al.*

**FOR DEFENDANT TRACTOR SUPPLY COMPANY OF TEXAS, L.P.**

9-11-2015
Date

Gregory A. Sandfort
President & Chief Executive Officer
Tractor Supply Company of Texas, L.P.
5401 Virginia Way
Brentwood, TN 37027
(615) 440-4000

35

# APPENDIX A

## Corporate Compliance Plan

## I.   Definitions

1. "Certificate of Conformity" or "COC" means a certification issued by EPA under the Clean Air Act on the basis of an application indicating that an Engine Family or Evaporative Family meets all requirements of the Clean Air Act and implementing regulations for a specific Model Year.

2. "Emissions Related Parts" refers to the parts listed in 40 CFR Part 1068 Appendix I.

3. "EPA Engine Family" means a group of engines, as specified in 40 C.F.R. §§ 90.116, 1051.230, and 1054.230.

4. "Evaporative Family" means a group of components, as specified in 40 C.F.R. § 1060.230.

5. "Model Year" means model year as defined in 40 C.F.R. §§ 90.3, 1051.801, and 1054.801, as appropriate.

6. "Amendment Application" means any application for any amendment or revision to a Certificate of Conformity submitted to and approved by EPA for an EPA Engine Family or Evaporative Family after issuance of the original Certificate of Conformity for that EPA Engine Family or Evaporative Family.

7. "Sample" means one representative and randomly selected engine or vehicle from a Vehicle or Engine Model.

8. "Subject Vehicles and Engines" or "SVE" means all EPA-regulated, recreational vehicles (including all-terrain vehicles, off-highway motorcycles, and snowmobiles) and small spark-ignition engines, whether stand-alone or contained in equipment, imported, purchased or distributed by or on behalf of Tractor Supply Company (TSC). However, five or fewer vehicles or engines (per Vehicle or Engine Model) that are imported in compliance with any of the exemptions listed under 40 C.F.R. Parts 85, Subpart R, Part 90, Subpart J, Part 1054, Subpart G, or Part 1068, Subpart C, are not included.

9. "Supplier" means any entity that sells, distributes, or provides any SVE to TSC.

10. "Test Lot" means all vehicles or engines of the same Vehicle or Engine Model imported or to be imported into the United States during a calendar six month period (i.e., between January 1 and June 30 and between July 1 and December 31 of any year).

11. "Group I" SVE means any SVE for which TSC is the importer of record.

12. "Group II" means any SVE that is not a Group I SVE and bears any TSC private label (a brand name trademarked by TSC, such as "Huskee" or "County Line").

13. "Group III" SVE means any SVE that is not a Group I or Group II SVE.

14. "TSC" means both Tractor Supply Company, Inc. and Tractor Supply Company of Texas, L.P.

15.

    a. "Vehicle or Engine Model" means any set of SVEs that is certified in the same EPA Engine Family, built by the same Manufacturer in the same Model Year (as designated by the Manufacturer), and with the same vehicle or engine mass, transmission type, displacement, and power (i.e., HP or kW).

    b. "Vehicle or Engine Product" means any set of Group II or Group III SVEs that is built by the same Manufacturer with the same vehicle or engine mass, transmission type, displacement, and power (i.e., HP or kW) and delivered in the same calendar year, or inspected in connection with delivery made or to be made in the calendar year following the inspection, by the same Supplier.

## II.    Pre-Importation or Pre-Delivery Compliance Verification Program

### A.    Requirements Applicable to Group I SVEs

16. Prior to the first time TSC imports a Vehicle or Engine Model that is a Group I SVE, TSC shall:

    a. Designate a Corporate Compliance Representative responsible for assuring compliance with TSC and EPA Clean Air Act mobile source requirements (including the requirements of this Consent Decree). Such Corporate Compliance Representative shall be a member of the Corporate Vehicle and Engine Compliance Group required by Paragraph 11 of the Consent Decree;

    b. Conduct, or obtain results of, emission testing on at least one Sample of the Vehicle or Engine Model to be imported, in accordance with Appendix C (Emissions Testing Guidelines);

    c. Confirm that the certificate holder has complied or will comply with all applicable EPA requirements (if any) regarding production line testing. For purposes of this paragraph, TSC may rely on written assurances of compliance or contractual obligations to comply from the certificate holder unless TSC has information that would contradict such assurances or indicate such contractual obligations are not being met.

    d. Obtain a copy of all EPA-issued Certificates of Conformity and their corresponding application(s), including any Amendment Applications approved by EPA for an EPA Engine Family after issuance of the original COC for that EPA Engine Family, and a copy of any required bonds;

    e. Physically inspect at least one Sample of the Vehicle or Engine Model to be imported. The physical inspection shall include both visual inspection and disassembly to the extent necessary to confirm that the Sample:

3

     i.  is covered by a COC that displays the EPA Engine Family name and Evaporative Family name as applicable, with an effective date prior to the date the Vehicle or Engine Model entered or will enter the United States, and, for vehicles certified under 40 C.F.R. Part 86 or 1051, displays a model name that matches the model name found on the vehicle;

     ii.  includes exhaust and evaporative emission control information labels in compliance with applicable EPA regulations;

     iii.  is built, in all material respects, in conformity with the design specifications (e.g., Emissions Related Parts, adjustable parameters, catalysts, and any other component that may reasonably be expected to affect emissions) as described in the corresponding application for the EPA-issued COC, and meets all applicable EPA requirements;

     iv.  is accompanied by an owner's manual containing an emissions warranty that complies with all applicable EPA requirements and which includes valid contact information for the warranty servicer identified by the warranty statement;

  f.  Complete a Vehicle Inspection Checklist or the Engine (and Equipment) Inspection Checklist (as appropriate) set forth in Attachments A and B to Compliance Plan, and apply the Compliance Determination Guidelines set forth in Attachment E to this Compliance Plan.

  g.  If the Vehicle or Engine Model is certified with a catalyst:

     i.  Verify, via physical inspection of the Sample(s), the catalyst part number, dimensions, and cell density, which shall be recorded on the Catalyst Measurement Worksheet set forth in Attachment F to this Compliance Plan.

     ii.  Compare the Catalyst Measurement Worksheet to the catalyst description in the corresponding application for the Certificate of Conformity.

**B.**    **Requirements Applicable to Group II and Group III SVEs:**

17. Prior to TSC's acceptance of the delivery of any Vehicle or Engine Product in a calendar year of which TSC has or will have greater than 40 units in inventory at any one time during that calendar year:

  a.  TSC shall contractually obligate the Supplier of the Vehicle or Engine Product to:

     i.  Designate an employee responsible for assuring compliance with EPA and TSC requirements;

4

    ii.    Comply with all applicable requirements (if any) regarding production line testing, emission control system warranties, and bonding, and to notify TSC within 10 days (or as otherwise required by applicable law) if the Supplier becomes aware that any Vehicle or Engine Product is subject to a recall for emissions-related defects or for production line testing results; and

    iii.    provide TSC with all EPA issued COCs for the Vehicle or Engine Product.

b.    TSC or the Supplier shall physically inspect, using the Abbreviated Vehicle Inspection Checklist or Abbreviated Engine (and Equipment) Inspection Checklist (as appropriate) set forth in Attachments C and D to this Compliance Plan, at least two (2) samples representative of each Vehicle or Engine Product within three (3) months prior to the date of the first delivery to TSC of such Vehicle or Engine Product in each calendar year. TSC shall obtain the completed checklists from the Supplier if the Supplier conducts the inspections. The physical inspection shall confirm that the sample:

    1.    is covered by COCs that display the EPA Engine Family name and Evaporative Family name as applicable, with effective date(s) prior to the date the inspected unit was manufactured, for the appropriate vehicle or engine type, model year, manufacturer, engine displacement, and fuel type, and, for vehicles certified under 40 C.F.R. Part 1051, displays the model name of the vehicle;

    2.    includes exhaust and, as applicable, evaporative emission control information label(s) in compliance with applicable EPA regulations;

    3.    is accompanied by an equipment or engine owner's manual that includes an emissions control system warranty for the length of time specified in the applicable regulations that includes valid contact information for the warranty servicer identified by the warranty statement; and

    4.    does not have a crankcase that vents directly to open air, if apparent without disassembly.

c.   If the Supplier of a Group II SVE has not represented in writing that the SVE is subject to production line testing requirements <u>or</u> if the result of any inspection of a Group II SVE performed pursuant to Paragraph 17(b) identifies an instance of nonconformance, then TSC shall perform, or obtain results of, emission testing on at least one Sample of the affected Vehicle or Engine Model, in accordance with Appendix C (Emissions Testing Guidelines) and, if the Vehicle or Engine Model is certified with a catalyst, inspect the catalyst in accordance with the provisions of paragraph 16(g).  If the emissions testing and/or catalyst inspection is required because of an instance of nonconformance, then such testing and/or catalyst inspection shall take place not more than sixty (60) days after the inspection that identified the instance of nonconformance.

## III.   Post-Importation Compliance Verification Program For Group I SVEs

18.  For Group I SVEs, beginning upon the first import of a Vehicle or Engine Model to the United States by TSC, not later than the last day of each calendar six month period (i.e., by June 30 for imports between January 1 and June 30, and by December 31 for imports between July 1 and December 31 of any year) during which TSC imports that Vehicle or Engine Model (including the first importation), TSC shall:

a.   Conduct a physical inspection and complete a Vehicle Inspection Checklist or Engine (and Equipment) Inspection Checklist (as appropriate) set forth in Attachments A and B to this Compliance Plan and apply the Compliance Determination Guidelines set forth in Attachment E to this Compliance Plan, in accordance with the requirements of Paragraph 16.e, for at least one (1) Sample present in the United States from the most recent entry in the Test Lot corresponding to the calendar six month period in which the inspection is performed;[1]

b.   Verify that each Sample conforms with the requirements of Paragraphs 16.e.i-iv (TSC shall obtain any Amendment Applications of the relevant COC submitted to and approved by EPA since the first import of the Vehicle or Engine Model);

c.   Conduct, or obtain results of, emission testing on at least one Sample present in the United States from the most recent entry[2] in the Test Lot corresponding to the calendar six month period in which the emission testing is performed, in accordance with Appendix C (Emissions Testing Guidelines);

---

[1] Provided, however, that if, despite its reasonable efforts, TSC is unable to complete the inspection and/or testing required by Paragraph 18 on the selected Sample before the next entry of that Vehicle or Engine Model in the same Test Lot, TSC need not select a new Sample but may, instead, satisfy the requirements of Paragraph 18 using the Sample originally selected.
[2] Provided, however, that if, despite its reasonable efforts, TSC is unable to complete the inspection and/or testing required by Paragraph 18 on the selected Sample before the next entry

d.   If the Vehicle or Engine Model is certified with a catalyst:

      i.   Verify, via physical inspection of the Sample(s), the catalyst part number, dimensions, and cell density, which shall be recorded on the Catalyst Measurement Worksheet set forth in Attachment F to this Compliance Plan.

---

of that Vehicle or Engine Model in the same Test Lot, TSC need not select a new Sample but may, instead, satisfy the requirements of Paragraph 18 using the Sample originally selected.

      ii.  Compare the Catalyst Measurement Worksheet to the catalyst description in the corresponding application for the Certificate of Conformity.

## IV.   Compliance Assurance, Nonconformance, Additional Testing

19. <u>Compliance Assurance.</u>  TSC shall not import (where it is the importer of record) or accept delivery of (where it is not the importer of record) a Vehicle or Engine Model until TSC has

    a.  verified that all contracting requirements in Sections II and III have been met and (when required) that a Corporate Compliance Representative has been designated in accordance with Paragraph 16.a of this Compliance Plan;

    b.  completed or received the appropriate completed Checklist and other required documents and information and confirmed that the inspection corresponding to the Checklist complies with all requirements of this Compliance Plan;

    c.  conducted and/or received the results of any required emissions testing and/or catalyst inspections, and confirmed that such testing or inspection complies with all requirements of this Compliance Plan; and

    d.  verified, based on the information obtained via subparagraphs a-c of this paragraph, that the Vehicle or Engine Model conforms with all applicable EPA requirements (including, but not limited to, applicable EPA emissions standards (where TSC has obtained emission test results) and the specifications contained in the COC application (where TSC has obtained the COC application)).

20. <u>Nonconformance Identified by TSC.</u>  If TSC a) cannot verify conformance in accordance with Paragraph 19.d, b) becomes aware that the Vehicle or Engine Model of any Group I, II, or III SVE is subject to a recall for emissions-related defects or for production line testing results or c) obtains any other information indicating that any Group I, II, or III SVE does not conform to the Clean Air Act or its implementing regulations, then TSC shall, within 10 business days:

    a.  notify in writing (i) EPA, (ii) the Supplier (if applicable), and (iii) the Manufacturer and Certificate holder (if different parties) of the nonconformance;

    b.  retain the inspected unit to the extent the nonconformance was determined through a checklist inspection.

    c.  stop importation to the United States and/or acceptance of delivery of the affected Vehicle or Engine Model, and cease sale and distribution of any SVEs of the affected Vehicle or Engine Model already in inventory, until the noncompliance is remediated to EPA's satisfaction.  Such remediation may include a requirement to export or destroy vehicles or engines in inventory within 90 days after notice under this subparagraph, as required by EPA, pursuant to Paragraph 12 of the Consent Decree.

8

    d.  report to EPA the total inventory quantity of all SVEs of the affected Vehicle or Engine Model.

    e.  at EPA's request, notify, to the extent possible, any customers who have purchased any SVE of the affected Vehicle or Engine Model that they may seek repair at TSC's cost or reimbursement from TSC.  Such notification shall include notice by mail to any customer whose address is known to TSC and posting of notices in TSC stores, except that TSC is not required to post notices in stores that did not stock the affected Vehicle or Engine Model.

21. <u>Nonconformance Identified by EPA</u>.  If EPA obtains information that indicates that a Vehicle or Engine Model a) may not conform to all applicable EPA requirements (including, but not limited to, applicable EPA emissions standards and the specifications contained in the COC application) or b) is subject to recall for emissions-related defects or has production line testing results that show exceedances of applicable regulatory requirements or the applicable COC, or if EPA obtains any other information indicating that a Vehicle or Engine Model does not conform in any other way to the Clean Air Act or its implementing regulations, EPA will notify TSC in writing and may order TSC to follow the procedures set forth in Paragraph 20.a-e.  If EPA issues such an order, it shall do so in a writing (which may be the same as the written notification of the nonconformance) that identifies the class or category of engines/equipment affected and describes how EPA reached its conclusion.

22. <u>Steps TSC May Take After Identification of Nonconformance.</u>  If either TSC or EPA identifies any nonconformance pursuant to Paragraphs 20 or 21, TSC may:

    a.  perform additional inspections or tests on one or more additional Samples to confirm or rebut inspection or test results in accordance with applicable regulations, provided that such tests are completed and the results reported to EPA not later than 60 (sixty) days after TSC notifies EPA of a nonconformance in accordance with Paragraph 20.a or after EPA provides written notice to TSC of a nonconformance in accordance with Paragraph 21;

    b.  submit a written request to EPA seeking approval to resume importation, acceptance of delivery, sale and/or distribution of the Vehicle or Engine Model at issue, or a subset thereof, which shall include the reasons supporting such request.  EPA will respond to any such request within 60 days of receipt.  Disputes arising from TSC's request and/or EPA's response shall be resolved in accordance with Section IX (Dispute Resolution) of the Consent Decree.

23. <u>Additional Testing.</u>

    a.  EPA may request that TSC conduct emissions testing (and, for Group I only, catalyst testing) on one Sample each from a maximum of seven (7) total Engine or Vehicle Models of Groups I, II, or III in a calendar year.  For the avoidance of doubt, EPA may request a maximum of seven (7) total tests each calendar year, which shall be the sum of the number of emissions tests and catalyst tests it

requests in that calendar year. TSC shall provide a complete test plan in accordance with Appendix C (Emissions Testing Guidelines) and the results of any tests performed to EPA no later than 90 days after EPA's request for testing.

b. If, after a good faith diligent search, which shall include inspecting all units in inventory at the top 30 (by remaining inventory) retail stores or 25% of total remaining inventory nationwide (whichever represents a smaller number of units), TSC determines that is has no units in inventory, and none scheduled for delivery, of the Engine or Vehicle Model that EPA requested it to test, then TSC shall submit a Unit Search Report to EPA within 15 business days of EPA's request for testing. The Unit Search Report shall identify the steps TSC took to locate a unit of the subject Engine or Vehicle Model and include: 1) the total number of remaining units in all TSC facilities nationwide (to include distribution centers, retail stores, and any other location where TSC regularly houses inventory), organized by facility and sorted from highest to lowest inventory; 2) the retail stores TSC searched; and 3) the Engine Families that were located. EPA may, as part of any comments on the Unit Search Report, request that TSC take additional steps to locate the subject Vehicle or Engine Model (including, but not limited to, notifying all of its retail stores of EPA's request and searching additional facilities (including distribution centers)), which request shall be subject to Dispute Resolution pursuant to Section IX of the Consent Decree. If, after taking such additional steps (if any), TSC cannot locate a unit of the subject Vehicle or Engine Model, then EPA's testing request shall be deemed withdrawn and shall not count against the maximum number of tests EPA may request in a calendar year.

## V.    Hotline and Staff Training Program

24. TSC shall notify all employees that the purposes of the existing confidential hotline include addressing customer complaints regarding emissions warranties and performance of emission control components, and that employees and other interested persons may submit confidential, anonymous information to the hotline about performance and implementation of this Compliance Plan.

25. Within ten (10) business days after receiving a call pertaining to TSC's compliance with this Compliance Plan, the performance of emission control components of any Subject Vehicle or Engine, or a warranty for emission control components, TSC shall investigate and submit an incident report to the Corporate Vehicle and Engine Compliance Group established pursuant to Paragraph 11 of the Consent Decree.

26. TSC shall provide appropriate initial and annual refresher training to all staff implementing this Compliance Plan. Comparable initial training shall be provided to any person who subsequently assumes responsibility for implementing this Compliance Plan. The training shall include a review of the procedures in this Compliance Plan. The individual(s) responsible for conducting inspections under this Compliance Plan shall have adequate technical training or practical experience to evaluate compliance with vehicle and engine design specifications and emission controls.

27. Each employee of TSC implementing this Compliance Plan shall certify that he or she has participated in the training, received a copy of the Compliance Plan, been informed of the Vehicle and Engine Compliance Hotline, and understands that violations of the applicable regulations can result in the imposition of significant civil penalties on TSC.

28. TSC shall provide the Guidelines and Checklists to each employee or contractor that may make a compliance determination based on a vehicle or engine inspected in accordance with this Compliance Plan.

## VI.   Reporting and Documentation[3]

29. Each of TSC's Semi-Annual Progress Reports submitted pursuant to Paragraph 17 of the Consent Decree shall include:

   a. A table showing the total number of SVEs that have been imported or purchased, and the total number sold, by TSC during the Reporting Period, as defined in Paragraph 17 of the Consent Decree.  The table shall be organized by Group, Vehicle or Engine Model, and EPA Engine Family and shall identify for each SVE:

        i. Group;

        ii. TSC SKU, Vehicle or Engine Model, and Supplier;

        iii. For Group I SVEs, manufacturer, total number imported and date of import, and EPA Engine Family;

        iv. For Group II and III SVEs, total number delivered to TSC, date range of deliveries, and EPA Engine Family of inspected units;

        v. Total number sold;

        vi. The identity of the Importer of Record (if known); and

        vii. For Group II SVEs, the name of the private label brand.

        viii. The total number of SVEs (organized by Group and Vehicle or Engine Model and EPA Engine Family) that have been exported due to nonconformity with a COC or exceedance of the regulatory

---

[3] For Purposes of Section VI of this Compliance Plan, for Group II and III SVEs where TSC does not have the EPA Engine Family information except from the inspected units, TSC shall evenly divide the total number of SVEs of a given Vehicle or Engine Product delivered in the calendar year to date among the EPA Engine Family(ies) of the units of that Vehicle or Engine Product inspected  pursuant to this Compliance Plan in connection with the units delivered in the calendar year to date.

standards during the reporting period.

b. A list of all private labels used by TSC for any SVEs imported, purchased or sold during the reporting period.

c. A table of all inspections, emission tests, and catalyst inspections performed by TSC or on behalf of TSC under Sections II and III of this Compliance Plan, including those that resulted in a decision by TSC not to, or a failure by TSC to, import or accept delivery of the Vehicle or Engine Model corresponding to the SVE inspected or tested. This table shall also identify any inspection, emissions test, or catalyst inspection that resulted in a finding of nonconformance, even if TSC did not ultimately import or accept delivery of the corresponding SVE. The table shall include the following information, as applicable: EPA Engine Family, engine serial number or VIN, equipment model name, engine model name, inspection date, test date, inspection location, test location, date of manufacture of the vehicle or engine, delivery date to TSC (for Group I SVEs this will be the date of import, for Group II and III SVEs, identify the date range of deliveries), Supplier, Importer of Record, TSC Corporate Compliance Evaluator, and the paragraph of the compliance plan to which the inspection or test corresponds.

d. A summary of all reports to EPA under Paragraphs 20.a, 20.d, 22.b, and 23 of this Compliance Plan, and a narrative description of the actions TSC has taken to comply with Paragraphs 16-28;

e. A summary of all incident reports to the Compliance Group under Paragraph 25 of this Compliance Plan, including an explanation of actions taken in response to compliance hotline calls; and

f. Supporting test data, test plans, inspection documents, and any and all other information necessary to determine TSC's compliance with this Compliance Plan shall be provided to EPA within 10 business days of EPA's request. TSC may request a reasonable extension to provide the requested materials. If requested by EPA, TSC shall provide all such supporting documentation and information simultaneously with the submission of the Semi-Annual Report to which it corresponds.

g. The tables referred to in this Paragraph 29 shall be provided in an electronic spreadsheet format that is editable (e.g., Microsoft Excel).

30. Certification of Reports. Each report submitted by TSC to EPA pursuant to this Compliance Plan shall comply with Paragraph 21 of the Consent Decree.

31. Documentation. TSC shall document all inspections and emissions and catalyst inspections and testing performed pursuant to Sections II, III, and IV, and all hotline calls received and incident reports generated (including their investigation and resolution) and all staff training materials and certifications generated pursuant to Section V, and retain these documents in accordance with Paragraph 50 of the Consent Decree.

32. <u>On-Highway Motorcycles:</u>  If TSC elects to begin selling on-highway motorcycles, then it shall, not less than six months before doing so, submit for EPA approval amendments to this Compliance Plan to cover such vehicles.

33. <u>Implementation of this Compliance Plan by TSC</u>.  It shall not be a violation of this Compliance Plan for a party other than TSC to implement any of its terms, except for the requirements set forth in Paragraph 19, on behalf of TSC.  However, TSC shall remain responsible for ensuring that all terms of the Compliance Plan are correctly and fully implemented, notwithstanding any arrangements it may make for performance by any third party.

34. <u>Use of Alternative Formats for Data Collection and Reporting.</u>  TSC may employ alternative formats (including electronic formats) of the documents attached as Attachments A-D and F as long as TSC gathers and reports all of the information set forth in those documents as required by this Compliance Plan and the Consent Decree.

Attachments to Compliance Plan:

A.  Vehicle Inspection Checklist

B.  Engine (and Equipment) Inspection Checklist

C.  Abbreviated Vehicle Inspection Checklist

D.  Abbreviated Engine (and Equipment) Inspection Checklist

E.  Compliance Determination Guidelines

F.  Catalyst Measurement Worksheet

**Attachment A: Vehicle Inspection Checklist**

**Exam Date and Time:**

**Facility Name and Location:**

**Inspector Name and Company:**

---

*Please insert N/A for items that are not applicable to the vehicle undergoing inspection.*

**Importer:**

**Entry #:**              **Entry Date:**              **Qty:**

**Declaration on EPA 3520 Form:** EPA Declaration Forms 3520-21 or 3520-1 Box letter and number marked (e.g., Box F, Recreational vehicles and engines, and Box 1, U.S. certified engine or engine installed in certified vehicle)

---

**Vehicle Type** (Types of vehicles include ATVs, off-road motorcycles, snowmobiles, UTVs, as defined in 40 C.F.R. § 1051.801, and highway motorcycles, as defined in 40 C.F.R. § 86.402-98.)

**Note presence of:** headlight, taillight/stoplight, turn signal, mirror(s), horn (circle which are applicable)

**Vehicle Maximum Speed** (note source of information, including owner's manual):

**Vehicle Identification Number (VIN)** - note source of information (box, frame, COC of origin, DOT label, etc.), and any discrepancies:

**Vehicle Manufacturer** – Note all sources of information (Box, EPA label, VIN, entry forms, owner's manual, and/or other documentation) and any discrepancies:

2

**Vehicle Model** – Based on decals/ badges on vehicle/engine (note any discrepancy between the decals/badges on the vehicle/engine and the box, owner's manual, Certificate, or entry paperwork):

**Vehicle Model Year** – etc.):    Based on 10th digit of the VIN (e.g. A=2010, B=2011, C=2012,

Based on EPA Engine Family listed on EPA label:

Based on EPA conformity statement on EPA label:

**From owner's manual, note the following for the vehicle model in question.  If information is not available, respond with "N/A".**

**Engine Power (HP):**         **Engine Displacement (cc):**

**Engine Stroke:** 2 / 4 (circle one)   **Transmission:** Automatic / Manual (circle one)

**Vehicle Date of Manufacture** – Note source of information (Box, DOT label, EPA label, entry forms, owner's manual, VIN, and/or other documentation) and any discrepancies:

**From EPA label, note:**
   **EPA Engine Family** –

   **Evaporative/Permeation Emissions Family** –

   **Fuel Type** –

   **Emission Control System Abbreviations** –

**Emission Controls** – Note presence and part number (if applicable) for each of the following: TWC (also fill out catalyst worksheet), OC (also fill out catalyst worksheet), O2S, HO2S, AIR, PAIR, EM, DFI, CFI, MFI, TBI

3

**From carburetor on vehicle, note:**

> **Manufacturer Marking(s)** (including any name, other words or characters, any label or other markings (e.g., barcode))–

> **Part Number** (if not listed above) –

**Air-Fuel Mixture Controls:**

**Identify any of the following if present on the vehicle/engine:** idle air-fuel mixture screw, jet needle clip, needle jet, pilot jet, or main jet (circle those that apply)

> **Does the COC application indicate that these components are adjustable parameters?**

> **Idle Air-Fuel Mixture Screw:** Yes or No (circle one)
> **Jet Needle Clip:** Yes or No (circle one)

> **Does the COC application specify the range of air-fuel ratios that may occur in use (for example, through a jet chart) with respect to the following parameters?**

**Needle Jet:** Yes or No (circle one)
**Pilot Jet:** Yes or No (circle one)
**Main Jet:** Yes or No (circle one)
**If yes, do the jet sizes on the jet chart match those on the vehicle or engine?** Yes or No (circle one)

**Needle Jet:** Yes or No (circle one)
**Pilot Jet:** Yes or No (circle one)
**Main Jet:** Yes or No (circle one)

> **If yes to all items, move to the next question, "Fuel Tank".**

> **If no to any item:**

> **(1) Note whether you can change the vehicle's air-fuel ratio in less than one hour with a few parts whose total cost is under $60 (check jets' accessibility and replaceability and carburetor bowl access).**

> > **Needle Jet:** Yes or No (circle one)      **Describe Markings** (if any):

4

**Pilot Jet:** Yes or No (circle one)     **Describe Markings** (if any):
**Main Jet:** Yes or No (circle one)      **Describe Markings** (if any):

**(2) Note whether the following components are permanently sealed or not normally accessible using ordinary tools within one half hour (check e.g., idle air-fuel mixture screw and jet needle clip accessibility and adjustability).**

**Idle Air-Fuel Mixture Screw:** Yes or No (circle one)
**Jet Needle Clip - Single Setting?** Yes or No (circle one)
**Tools used:**

**(3) Describe any other design element that, if changed or adjusted, may affect the vehicle's air-fuel ratio.**

**Fuel Tank:** metal or plastic (circle one)

**Fuel Line Markings:**

**Does the EPA Label Peel Off Without Being Destroyed or Defaced?** Yes or No (circle one; if yes, ensure photo documents the removal)

**Length of Emissions Warranty** – Check owner's manual and/or other documentation (include source of information in response)

Is an emission control warranty in the owners manual (as defined under 40 C.F.R. § 1051.801)? **Y / N**

Is the warranty service contact information responsive? **Y / N**

**Does Crankcase Vent Directly to Open Air?** Yes or No (circle one)

Was the vehicle/engine or any portion thereof kept for further inspection?  If so, list (e.g., carburetor, exhaust system, etc.) – Maintain chain of custody.

**As part of the inspection, take clear photos to document the following:**
- Entire vehicle (from all sides), including headlight, taillight/stoplight, turn signal, mirror(s), and horn (as applicable)
- Any model name/number or decal on the vehicle, box, manual, or other documentation
- VIN
- EPA label
- DOT label (if applicable)
- Any of the following emission controls that are present: TWC, OC, O2S, HO2S, AIR, PAIR, EM, DFI, CFI, MFI, TBI
- Fuel tank

5

- Crankcase
- Carburetor (from as many sides as possible)
- Carburetor components (if applicable)
- Box (if applicable)
- Hangtag (if post-importation)

**Attach a copy of the:**
- Customs (CBP) Entry/Immediate Delivery form (CBP Form 3461)
- EPA Declaration Forms 3520-1or 3520-21
- any DOT declaration forms (Form HS-7)
- owner's manual
- invoices and/or bills of lading

**Attachment B:  Engine (and Equipment) Inspection Checklist**
*For loose engines or engines contained in equipment, but not vehicle engines.*

**Exam Date and Time:**

**Facility Name and Location:**

**Inspector Name and Company:**

---

*Please insert N/A for items that are not applicable to the engine/equipment undergoing inspection.*

**Importer:**

**Entry #:**                    **Entry Date:**                    **Qty:**

**Declaration on EPA 3520-21 Form:** Box letter and number marked (e.g., Box D, Other non-road compression-ignition engines, and Box 1, U.S. certified engine or engine installed in certified vehicle)

---

**Equipment Type** (for example, generators, pumps, tractors, etc.)

**Equipment Model** – Note all sources of information:

**Equipment Manufacturer** – Note all sources of information:

**Equipment Date of Manufacture (or Model Year)** – Note all sources of information:

**Equipment Dry Weight** – Note all sources of information:

**Engine Serial No.:**

**Engine Model Year** – Based on EPA label, entry forms, serial number, and/or owner's manual, note any discrepancies:

**Engine Power (HP):**                    **Engine Displacement (cc):**

**Engine Stroke:** 2 / 4 (circle one)        **Fuel Type:**

**Length of Emissions Warranty** – Check owner's manual and/or other documentation (include source of information in response)

Is an emission control warranty in the owners manual (as defined under 40 C.F.R. § 1054.801)? **Y / N**

Is the warranty service contact information responsive? **Y / N**

**Engine Manufacturer** – Note all sources of information (Box, EPA label, VIN, entry forms, owner's manual, and/or other documentation) and any discrepancies:

**Engine Model** – Based on decals/ badges on equipment/engine (note any discrepancy between the decals/badges on the vehicle/engine and the box, owner's manual, Certificate, or entry paperwork):

**Engine Date of Manufacture** – Note source of information (Box, DOT label, EPA label, entry forms, owner's manual, and/or other documentation) and any discrepancies:

**From EPA label, note:**
   **EPA Engine Family** –

   **Evaporative Family** –

   **Fuel Type** –

   **Emission Control System Abbreviations** –

**Emission Controls** – Note presence and part number (if applicable) for each of the following: TWC (also fill out catalyst worksheet), OC (also fill out catalyst worksheet), O2S, HO2S, AIR, PAIR, EM, DFI, CFI, MFI, TBI, EGR

**From carburetor on engine, note:**
      **Manufacturer Marking(s) –**


      **Part Number –**


**Air-Fuel Mixture Controls:**

**Identify any of the following if present on the engine/equipment:** idle air-fuel mixture screw or jet needle clip (circle those that apply)

      **Does COC application indicate that these components are adjustable?**

      **Idle Air-Fuel Mixture Screw:** Yes or No (circle one)
      **Jet Needle Clip:** Yes or No (circle one)

            **If yes to all items, move to the next question, "Fuel Tank".**

            **If no to any item, note whether these components are permanently sealed or not normally accessible using ordinary tools (check idle air-fuel mixture screw and jet needle clip accessibility and adjustability within one half hour using ordinary tools).**

            **Idle Air-Fuel Mixture Screw:** Yes or No (circle one)
            **Jet Needle Clip:** Yes or No (circle one)
            **Tools used:**

            **Describe any other design element that can be adjusted and that, if adjusted, may affect the engine's air-fuel ratio.**


**Fuel Tank:** metal or plastic (circle one)

**Fuel Line Markings:**

**Does the EPA Label Peel Off Without Destroying or Defacing?** Yes or No (circle one)

**Does Crankcase Vent Directly to Open Air?** Yes or No (circle one)

Was the engine/equipment or any portion thereof kept for further inspection?  If so, list (e.g., carburetor, exhaust system, etc.) Maintain chain of custody.

**As part of the inspection, take clear photos to document the following:**
- Equipment
- Any model name/number or decal on the equipment
- Serial number
- EPA label
- Any of the following emission controls: TWC, OC, O2S, HO2S, AIR, PAIR, EM, EFI, MFI, TBI, EGR
- Fuel Tank
- Crankcase
- Carburetor (from as many sides as possible)
- Carburetor components (if applicable)
- Box (if applicable)

**Attach a copy of the:**
- Customs (CBP) Entry/Immediate Delivery form (CBP Form 3461)
- EPA Declaration Forms 3520-1or 3520-21
- owner's manual
- invoices and/or bills of lading

## Attachment C:  Vehicle Inspection Abbreviated Checklist

**Instructions:**
1) Use this Checklist for products certified as recreational vehicles.
2) Use "N/A" for items that are not applicable to the vehicle undergoing inspection.
3) Use "Unavail." where the requested information is not available.
4) "Y/N" indicates Yes or No- for these items, please circle either "Y" or "N" as appropriate.
5) An "N" answer for any item (except regarding No. 6) indicates a potential nonconformance issue - please contact Tractor Supply's Compliance Manager as soon as possible.

Exam Date and Location:

Inspector Name and Company:

TSC Supplier (if not the same as inspecting company):

Importer of Record (if available):

VIN on frame of inspected unit:

| INFORMATION CATEGORIES | INFORMATION SOURCES | | | | EVALUATION | |
|---|---|---|---|---|---|---|
| | EPA CERTIFICATE OF CONFORMITY (COC) | EMISSION CONTROL INFORMATION (ECI) LABEL | OWNERS MANUAL, BOX | INSPECTED UNIT | POTENTIAL COMPLIANCE ISSUES | COMMENTS/ DISCREPANCIES |
| 1   EPA Engine Family | | | | | Does the engine family on the COC match that on the ECI label?  Y / N | If N, describe the exemption covering the vehicle: |

| # | INFORMATION CATEGORIES | INFORMATION SOURCES | | | | EVALUATION | |
|---|---|---|---|---|---|---|---|
| | | EPA CERTIFICATE OF CONFORMITY (COC) | EMISSION CONTROL INFORMATION (ECI) LABEL | OWNERS MANUAL, BOX | INSPECTED UNIT | POTENTIAL COMPLIANCE ISSUES | COMMENTS/ DISCREPANCIES |
| 2 | Evaporative / Permeation Family | | | Not Applicable | Are fuel lines marked? Y/N <br><br> Fuel tank composition: Metal / Plastic (circle one) | Does the evaporative/ permeation family on the COC match that on the ECI label?   Y/N <br><br> If the evaporative/permeation family contains the word "METAL," is the fuel tank made of metal?  Y/N | |
| 3 | Model Name | | Not Applicable | Owners manual: <br><br> Box (if available): | Model name(s) on any vehicle labels, decals or markings: | Is the model name of the inspected unit listed on the COC?  Y/N | Does the model name on the owners manual and box (if available) match the model name of the inspected unit? Y/N |
| 4 | COC Effective Date / Date of Manufacture | COC effective date: | Date of manufacture: | Not Applicable | Date of manufacture (if not on the ECI label): | Was the vehicle manufactured after the effective date of the COC? Y/N | |
| 5 | Model Year | First letter of the EPA engine family on the COC (e.g. D=2013, E=2014, etc.): | Model year stated in the "This vehicle meets…" statement: | | | Does the model year on the ECI label match the model year of the COC?  Y/N | |
| 6 | Vehicle Type | Vehicle/engine category: | Vehicle type stated in the "This vehicle meets…" statement: | Is vehicle maximum speed in owners manual > 25 mph?  Y/N <br><br> Does vehicle have a curb mass <= 793 kg (1749 lbs.)?  Y/N | Headlight?  Y/N Taillight/stoplight?  Y/N Turn signal(s)?  Y/N Mirror(s)?  Y/N Horn?  Y/N <br><br> Does vehicle have 2 or 3 wheels?  Y/N | If answers to all questions in this category 6 are "Y" and the inspected vehicle is certified as a recreational vehicle, the inspected unit is not appropriately certified. | |

| # | INFORMATION CATEGORIES | INFORMATION SOURCES | | | | EVALUATION | |
|---|---|---|---|---|---|---|---|
| | | EPA CERTIFICATE OF CONFORMITY (COC) | EMISSION CONTROL INFORMATION (ECI) LABEL | OWNERS MANUAL, BOX | INSPECTED UNIT | POTENTIAL COMPLIANCE ISSUES | COMMENTS/ DISCREPANCIES |
| 7 | *Manufacturer* | Certificate issued to: | Corporate name/ trademark on label: | Emission control warranty servicer in owners manual: | 1st-3rd letters of VIN: (Decoder at http://www.nhtsa.dot.gov/ cars/rules/manufacture/) | Is the manufacturer identified on the ECI label consistent with the one identified by the VIN or the warranty servicer identified in the owners manual?  **Y / N** | |
| 8 | *Emission Controls* | Key emission related components: | Emission control system abbreviations: | Owners manual: | Of those listed on the COC, circle what is observed on unit: Oxygen sensor (HO2S, O2S) / Fuel injection (DFI, CFI, SFI, EFI, MFI, TBI) / PAIR.  Of those listed on the COC, circle what is not observable without disassembly: Oxygen sensor (HO2S, O2S) / Fuel Injection (DFI, CFI, SFI, EFI, MFI, TBI) / PAIR | Are the emission controls listed on the COC consistent with those listed on the ECI label or owners manual and found on the vehicle (except for those not observable without disassembly)?  **Y / N** | Note: An emissions control device is "not observable without disassembly" if the place where the device would be expected to be located cannot be seen sufficiently to determine the presence or absence of the device without disassembling a portion of the unit. |
| 9 | *Displacement (cc)* | | | Owners manual specifications: | From model name on vehicle, if applicable. | Is the engine displacement on the COC consistent with that shown in the owners manual and ECI label?  **Y / N** | |
| 10 | *Fuel Type* | | | Owners manual: | | Is the fuel type listed on the COC consistent with that listed on the ECI label?  **Y / N** | Is the owners manual fuel information consistent with the COC and ECI label?  **Y / N** |

11.   a.   Is an Emission Control Information label affixed on the engine so that it cannot be removed without destroying or defacing?
**Y / N**

b.  Is/does the Emission Control Information label:

Y / N  Written in English?

Y / N  Secured to a part of the vehicle not normally requiring replacement?

Y / N  Have the heading "Emission Control Information"?

Y / N  Include the manufacturer's full corporate name and trademark (or another company's under the branded vehicle provisions of 40 C.F.R. §1051.645?

Y / N  Identify the EPA Engine Family?

Y / N  Include the displacement (or is the vehicle permanently labeled with a unique model name that corresponds to a specific displacement, or does the engine family cover only one engine size)?

Y / N  State the operating fuel type?

Y / N  State the date of manufacture or is it stamped elsewhere on the vehicle/engine?

Y / N  State the applicable exhaust emission standards or limits in g/km or g/kw-hr?

Y / N  Identify the emission control system using abbreviations (unless in there is no room for it and it is listed in the owners manual?

Y / N  List specifications and adjustments for engine tune-up?

Y / N  Identify requirements for lubricants or is this in the owners manual?

Y / N  Identify evaporative emission controls?

Y / N  Include a statement that the vehicle meets USEPA regulations for [model year] [vehicle type]?

c.  If the answer to any item in Paragraph 11.b is "N," has EPA approved a modified ECI label pursuant to 40 C.F.R. § 1051.801)?  **Y / N** for this Engine Family? **Y / N**

12.

a.  Is an emission control warranty in the owners manual (as defined under 40 C.F.R. § 1051.801)?  **Y / N**

b.  Is the warranty service contact information responsive?  **Y / N**

c.  Does the length of the emissions warranty in the owners manual (insert here: _____ ) conform to recreational vehicle regulatory requirements at 40 C.F.R. § 1051.120 shown below?  **Y / N**

| Off-highway motorcycles: | |
|---|---|
| > 70 cc | 5,000 km (or 30 months if the vehicle does not have an odometer) |
| ≤ 70 cc | 2,500 km (or 30 months if the vehicle does not have an odometer) |
| ATVs: | |

| ≥ 100 cc | 5,000 km, 500 hours (or 30 months if the vehicle does not have an odometer) |
| < 100 cc | 2,500 km, 250 hours (or 30 months if the vehicle does not have an odometer) |
| Snowmobiles: | 4,000 km, 200 hours (or 30 months if the vehicle does not have an odometer) |

13. Is the crankcase vented in such a way as to prevent emissions discharging directly to open air (as observed without disassembly of the vehicle)?
Y / N

14. Attach the following:
   a. Certificate(s) of Conformity
   b. Owners Manual
   c. Invoice (if any)
   d. Clear photos of the inspected unit showing:
      ☐ Entire vehicle (from all sides), including headlight, taillight/stoplight, turn signal, mirror(s), and horn (as applicable)
      ☐ Any model name/number or decal on the vehicle or box (if available) or other documentation
      ☐ VIN
      ☐ ECI label
      ☐ Any of the following emission controls that are present and visible without disassembly: oxygen sensor, fuel injection, PAIR
      ☐ Fuel lines and tank, including any visible labels or markings (no disassembly required)
      ☐ Crankcase (no disassembly required)
      ☐ Box (if available)

**Attachment D:  Engine (and Equipment) Inspection Abbreviated Checklist**

Instructions:   1)  Use this Checklist for equipment containing small spark-ignition engines, and stand-alone small spark-ignition engines (but not for products certified as recreational vehicles).
2)  Use "N/A" for items that are **not applicable** to the engine or equipment undergoing inspection.
3)  Use "Unavail." where the requested information is **not available.**
4)  "Y/N" indicates Yes or No- for these items, please circle either "Y" or "N" as appropriate.
5)  An "N" answer for any item indicates a potential nonconformance issue – please contact Tractor Supply's Compliance Manager as soon as possible.
6)  The EXH ECI label is the label that identifies the EPA Engine Family.  It may also indicate compliance with EPA's EVP regulations.  When the EXH ECI label does not indicate compliance with EPA's EVP regulations, there should be a separate equipment EVP ECI label.  For equipment with a non-metal fuel tank, the fuel tank should also be marked or labeled with a fuel tank EVP family or code.

Exam Date and Location:

Inspector Name and Company:

TSC Supplier (if not the same as inspecting company):

Importer of Record (if available):

Engine Serial Number of Inspected Unit:

Equipment Type (e.g., generator, pump, etc.):

Equipment Model (if any, indicated on equipment or owners manual):

Equipment Dry Weight (if in owners manual):

Engine Model (if any, indicated on decals/ badges on engine or owners manual):

For the purposes of this checklist, "EXH" stands for exhaust, and "EVP" stands for evaporative.

| | INFORMATION CATEGORIES | INFORMATION SOURCES | | | | EVALUATION | |
|---|---|---|---|---|---|---|---|
| | | EPA CERTIFICATE OF CONFORMITY (COC) | EMISSION CONTROL INFORMATION (ECI) LABEL(S) | OWNERS MANUAL, BOX | INSPECTED UNIT | POTENTIAL COMPLIANCE ISSUES Y / N (circle one) | COMMENTS/ DISCREPANCIES |
| 1 | EXH Engine Family | | | Not Applicable | Not Applicable | Does the EXH engine family on the COC match the EXH engine family on the EXH ECI label? Y / N | If not, describe the applicable exemption: |
| 2 | EVP/ Permeation Family | Identify fuel tank EVP family unless fuel tank is metal: Identify equipment EVP family: | If the EXH ECI label includes a statement that the engine meets USEPA EXH and EVP regulations for [model year], check this box: □ If the box is not checked: 1) Is there a separate label on the equipment that lists the EVP family? Y / N AND 2) If the fuel tank is not metal, is there a separate label on the fuel tank that indicates EPA compliance? Y / N | Not Applicable | Are fuel lines marked? Y / N Family name on equipment EVP ECI label: Fuel tank composition: metal / plastic (circle one) If fuel tank is not metal, identify the family name on fuel tank label: | If there is an EVP/ permeation family listed on either the EXH ECI label or the equipment EVP ECI label, is there a COC for that EVP / permeation family? Y / N If the EXH ECI label includes a statement that the engine meets USEPA EXH and EVP regulations for [model year], is there an EVP COC issued to the engine manufacturer covering the same model year as the engine? Y / N | Note: If the fuel tank EVP label has a code, pursuant to 40 C.F.R § 1060.137(d), such that its EVP / Permeation Family name is not readily apparent, record that code in the "Inspected Unit" box where the Family name is requested. |

| | INFORMATION CATEGORIES | INFORMATION SOURCES | | | | EVALUATION | |
|---|---|---|---|---|---|---|---|
| | | EPA CERTIFICATE OF CONFORMITY (COC) | EMISSION CONTROL INFORMATION (ECI) LABEL(S) | OWNERS MANUAL, BOX | INSPECTED UNIT | POTENTIAL COMPLIANCE ISSUES Y/N (circle one) | COMMENTS/ DISCREPANCIES |
| 3 | COC Effective Date / Date of Manufacture | Effective date of engine EXH COC: <br><br> Effective date of fuel tank EVP COC unless fuel tank is metal: <br><br> Effective date of equipment EVP COC: | Engine date of manufacture: <br><br> If there is a separate equipment EVP ECI label, list the equipment date of manufacture: | | Engine date of manufacture (if not on the EXH ECI label): <br><br> Equipment date of manufacture (if not on the EVP ECI label): | Was the engine manufactured after the effective date of the EXH COC? Y/N <br><br> Was the equipment manufactured after the effective date of the EVP COC? Y/N | |
| 4 | Manufacturer | EXH COC issued to: <br><br> If fuel tank is not metal, fuel tank EVP COC issued to: <br><br> Equipment EVP COC issued to: | Corporate name/trademark on engine EXH ECI label: <br><br> Corporate name/trademark on fuel tank EVP label (if fuel tank is not metal): <br><br> If there is a separate equipment EVP ECI label, list the corporate name/trademark: | Emission control warranty servicer in engine manual: <br><br> Emission control warranty servicer in equipment manual (if different): | | Is the manufacturer identified on the EXH ECI label consistent with the EXH COC holder or the warranty servicer identified in the engine or equipment owners manual? Y/N | Note: If a label is abbreviated or coded such that the corporate name/trademark is not readily apparent, record the abbreviation or code on the label in the "Emission Control Information (ECI) Label(s)" box where the Corporate name/trademark is requested for that label. |
| 5 | Model Year | First letter of the EPA engine family on the EXH COC (e.g. D=2013, E=2014, etc.): | Model year stated in "This engine meets..." statement: | | | Does the model year on the EXH ECI label match the model year of the engine EXH COC? Y/N | |

| | INFORMATION CATEGORIES | INFORMATION SOURCES | | | | EVALUATION | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | EPA CERTIFICATE OF CONFORMITY (COC) | EMISSION CONTROL INFORMATION (ECI) LABEL(S) | OWNERS MANUAL, BOX | | INSPECTED UNIT | POTENTIAL COMPLIANCE ISSUES Y / N (circle one) | COMMENTS/ DISCREPANCIES |
| 6 | Emission Controls | *Not Applicable* | Emission control system abbreviations: | Owners manual: | | Of those listed on the EXH ECI label, circle what is observed on unit: Oxygen sensor (HO2S, O2S) / Fuel injection (DFI, CFI, SFI, EFI, MFI, TBI) / PAIR    Of those listed on the EXH ECI label, circle what is not observable without disassembly: Oxygen sensor (HO2S, O2S) / Fuel injection (DFI, CFI, SFI, EFI, MFI, TBI) / PAIR | Are the emission controls on the EXH ECI label or owners manual found on the engine (except for those not observable without disassembly)? Y / N | Note: An emissions control device is "not observable without disassembly" if the place where the device would be expected to be located cannot be seen sufficiently to determine the presence or absence of the device without disassembling a portion of the unit. |
| 7 | Displacement (cc) | Circle the engine class on the EXH COC: Class I < 225cc  Class II >= 225cc  Class III < 20 cc  Class IV >=20cc, <50cc  Class V >= 50cc | | Owners manual specifications: | | | Is the engine displacement shown in the owners manual, the EXH ECI label, and if applicable, the engine class listed on the EXH COC, consistent? Y / N | |
| 8 | Fuel Type | EXH COC: | | Owners manual: | | | Is the fuel type listed on the EXH ECI label or owners manual consistent with that listed on the EXH COC? Y / N | |

| | INFORMATION CATEGORIES | INFORMATION SOURCES | | | | | EVALUATION | |
|---|---|---|---|---|---|---|---|---|
| | | EPA CERTIFICATE OF CONFORMITY (COC) | EMISSION CONTROL INFORMATION (ECI) LABEL(S) | OWNERS MANUAL, BOX | INSPECTED UNIT | | POTENTIAL COMPLIANCE ISSUES Y / N (circle one) | COMMENTS/ DISCREPANCIES |
| 9 | Useful Life | | Emission Compliance Period: | Not Applicable | Not Applicable | | Is the useful life shown on the EXH ECI label consistent with the useful life on the EXH COC? Y / N | |

10.

a. Is an EXH ECI label affixed on the engine so that it cannot be removed without destroying or defacing?
Y / N

b. Is/does the EXH ECI label:
Y / N    Written in English?
Y / N    Secured to a part of the engine not normally requiring replacement?
Y / N    Have the heading "Emission Control Information"?
Y / N    Include the manufacturer's full corporate name and trademark?
Y / N    Identify the EPA Engine Family?
Y / N    Identify the emission compliance period or useful life?
Y / N    Include the displacement or does the engine family cover only one engine size?
Y / N    State the date of manufacture or is it stamped elsewhere on the engine?
Y / N    Identify the emission control system using abbreviations (unless in there is no room for it and it is in the owners manual)?
Y / N    Include a statement that the engine meets/ complies with USEPA regulations for [model year]…?
Y / N    List specifications and adjustments for engine tune-up or are they listed in the owners manual?
Y / N    State the operating fuel type or is it in the owners manual?
Y / N    Identify requirements for lubricants or is it in the owners manual?

c. If the answer to any item in Paragraph 10.b is "N", has EPA approved a modified EXH ECI label pursuant to 40 C.F.R. § 1054.135
for this Engine Family? Y / N

11.
   a.   Is an emission control warranty in the owner's manual (as defined under 40 C.F.R. § 1054.801)? **Y / N**

   b.   Is the warranty service contact information responsive? **Y / N**

   c.   Does the length of the emissions warranty in the owner's manual (insert here: _____) conform to small SI engine regulatory requirements in 40 C.F.R. §§ 90. 1103(a), 90.1104, and 1054.120 (as of CD Effective Date, 2 years)? **Y / N**

12.   Is the crankcase vented in such a way as to prevent the discharge of emissions directly to open air? **Y / N** (if "N", and Equipment Type is a snowthrower, is engine compliant with 40 C.F.R. § 1054.115(a)? **Y/N**)

13.
   a.   **Y / N**    Is the engine power ≤ 19 kW (25 HP) or does the engine meet the exemption under 40 C.F.R. § 1048.615?

   b.   If the spark-ignition engine is certified as handheld (Class III, IV, or V) and has a displacement > 80 cc:

          **Y / N**    Is it installed in handheld equipment?

   c.   If the spark-ignition engine is certified as handheld (Class III, IV, or V):

          **Y / N**    Is it in a recreational application with a combined total vehicle dry weight < 20 kg (44 lbs)?

   d.   **Y / N**    Is the engine otherwise appropriately certified, according to definitions in 40 C.F.R. §§ 90.116, 1054.1, and 1054.801?

14.   Attach the following:

   a. ☐   Certificate(s) of Conformity

   b. ☐   Owner's Manual

   c. ☐   Invoice (if any)

   d.      Clear photos of the inspected unit showing:

          ☐  - Equipment

          ☐  - Any model name/number or decal on the equipment, box (if available), or other documentation

          ☐  - Serial number

          ☐  - EXH ECI label and EVP ECI label(s) (if present)

          ☐  - Any of the following emission controls that are present and visible without disassembly: oxygen sensor, fuel injection, PAIR

☐ - Fuel lines and tank, including any visible labels or markings (no disassembly required)
☐ - Crankcase (no disassembly required)
☐ - Box (if available)

## Attachment E:  Compliance Determination Guidelines

**Does the vehicle/engine have an EPA label?**

If not, the vehicle/engine may be uncertified.

**If vehicle, is vehicle type appropriately certified?**

Determine if vehicle is appropriately certified, according to definitions in 40 C.F.R. § 1051.801; 40 C.F.R. § 1054.801; and 40 C.F.R. § 86.402-98.  As part of the determination, note that the regulations at 40 C.F.R. § 85.1703 exclude from the definition of "motor vehicles" certain vehicles.

**If equipment (not vehicle) has a spark-ignition engine, is an appropriately-certified engine installed?**

If the engine type is spark-ignition, determine if it is appropriately certified for equipment application, according to definitions in 40 C.F.R. §§ 90.116, 1054.1, and 1054.801.  If the engine is certified as Class 5 handheld and has a displacement greater than 80 cc, note that 40 C.F.R. § 1054.103(e) does not allow installation in nonhandheld equipment. If the engine is certified as Class 5 handheld and has a displacement greater than 80 cc, also note that 40 C.F.R. § 1054.801 allows handheld engines to be used in recreational applications only if the combined total vehicle dry weight is less than 20 kg (44 lbs).  If the engine power is greater than 19 kW (25 HP), note that the engines should be certified under 40 C.F.R. Part 1048, except in accordance with 40 C.F.R. § 1048.615.  Note that the new Phase III standards for spark-ignition engines generally take effect as follows: 2010 - handheld (combined total vehicle dry weight is less than 16 kg or a recreational vehicle combined total vehicle dry weight is less than 20 kg); 2011 – nonhandheld engines with displacement ≥ 225 cc; and nonhandheld engines with displacement < 225 cc.  Note the exemptions and requirements in 40 C.F.R. Part 1054.

**Using information from the box, EPA label, DOT label, entry forms, and owner's manual, was the vehicle/engine manufactured after the applicable certificate of conformity (COC) effective date?**

Note any discrepancies, based on source of information.  If the vehicle/engine was manufactured before the applicable COC effective date, the vehicle/engine may be uncertified.

**Is the engine cycle (2-stroke or 4-stroke) as stated in the product manual or other accompanying documentation consistent with the COC and COC application?**

If not, the vehicle/engine may be uncertified.

**Is the engine displacement as stated in the product manual or other accompanying documentation consistent with the COC and COC application?**

If not, the vehicle/engine may be uncertified.

**Is the engine's power as stated in the product manual or other accompanying documentation consistent with the COC and COC application?**

If not, the vehicle/engine may be uncertified.

**For vehicles, is the transmission consistent with the COC and COC application?**

If not, the vehicle may be uncertified.

**Is the vehicle/engine manufacturer identified on the box, EPA label, entry forms, or owner's manual listed on the COC and in the COC application?**

Note any discrepancies with the COC application.  For vehicles, use the first three digits of any VIN and the WMI (VIN Decoder) Database at http://www.nhtsa.dot.gov/cars/rules/manufacture/ to determine the manufacturer.  Enter the first three digits of any VIN into the database in the "WMI" row to determine the manufacturer's name and address assigned to the VIN.  If the vehicle/engine manufacturer is different from the one listed in the COC application, the vehicle/engine may be uncertified.

**Is the vehicle/engine model listed on the COC and COC application?**

Based on decals/ badges on a vehicle/engine, note any discrepancies with models listed on the corresponding COC and COC application.  If the vehicle/engine model is not listed on the COC or in the COC application, the vehicle/engine may be uncertified.

**For vehicles, is the vehicle model year, based on 10th digit of the VIN, consistent with the model year of the COC?**

If not, the vehicle may be uncertified.

**If not a vehicle engine, is the engine model year identified on the EPA label, entry forms, or owner's manual or other accompanying documentation consistent with the model year of the COC?**

Note any discrepancies, based on source of information.  If the engine model year is not consistent with the model year of the COC, the engine may be uncertified.

**Are the emission controls consistent with the description on the COC and in the COC application?**

Note any discrepancies with the presence, part number(s), and the specifications for the emission controls. For catalysts, use the catalyst worksheet. If the emission controls are not consistent with the description in the COC and COC application, the vehicle/engine may be uncertified.

**Is the carburetor manufacturer consistent with the description in the COC application?**

If not, the vehicle/engine may be uncertified.

**Is the carburetor part number consistent with the description in the COC application?**

If not, the vehicle/engine may be uncertified.

**Is the fuel tank composition consistent with the description in the COC application?**

If not, the vehicle/engine may be uncertified.

**Based on a review of the inspection Checklist, are there adjustable parameters on the vehicle/engine, and, if so, is this consistent with the description in the COC application?**

If the vehicle/engine does not conform to the description of adjustable parameters in the COC application, the vehicle/engine may be uncertified.

**Based on a review of the inspection Checklist, are there any internal carburetor components that, if replaced, may affect emissions (e.g., any carburetor jet) and, if so, is this consistent with the description in the COC application?**

If the vehicle/engine contains replaceable internal carburetor components that are not listed in the COC application, the vehicle/engine may be uncertified.

**Does crankcase vent to open air?**

If so, the vehicle/engine may be uncertified.

**Does the EPA label conform to the regulations cited below with regard to performance, accuracy, and content?**

To conform to the regulations cited below, the labels should not be capable of being removed without being destroyed or defaced, and the required content of the labels must be present and accurate. For accuracy, compare the engine family designation, evaporative family designation, fuel type, emission control system abbreviations, and other information listed on EPA label with the corresponding COC and COC application and note any discrepancies.

Small Non-road Spark Ignition Engines…………………………...………..40 C.F.R. § 90.114; 40 C.F.R. § 1054.135
Large Non-road Spark Ignition Engines………………………………………………………40 C.F.R. § 1048.135
Non-road Compression Ignition Engines…………………………………...………..40 C.F.R. § 89.110, § 1039.135
Recreational Vehicles and Engines………………………………………………………..…40 C.F.R. § 1051.135

On-highway Motorcycles................................................................................40 C.F.R. § 86.413-2006

**Does the length of the emissions warranty conform to the regulations cited below?**

Compare the information from the owner's manual, warranty card, or other documentation with the regulatory requirements.

Small Non-road Spark Ignition Engines.......................40 C.F.R. § 90. 1103(a), § 90.1104; 40 C.F.R. § 1054.120
Large Non-road Spark Ignition Engines...............................................40 C.F.R. § 1048.101(g), § 1048.120
Non-road Compression Ignition Engines...................................................40 C.F.R. § 89.104, § 1039.120
Recreational Vehicles and Engines.................................................................40 C.F.R. § 1051.120
On-highway Motorcycles.................................................42 U.S.C. § 7541 (a)(I), 40 C.F.R. § 86.402-98

**Other Comments and Compliance Issues**

(Note any discrepancies with the information from the inspection with the COC and COC application):

**Attachment F:  Catalyst Measurement Worksheet**

| Catalyst Measurement Worksheet | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| Please insert N/A for items that are not applicable to the vehicle undergoing inspection. | | | | | | |
| | | | | | | |
| Engine Family | | | | | | |
| VIN/Serial No. | | | | | | |
| | | | | | | |
| | Measure Values (inches) | | Calculated (mm) | | Certificate Values | |
| Outside diameter of casing | | | | | | |
| Inside diameter of casing | | | | | | |
| Overall length of casing | | | | | | |
| Length of catalyst material | | | | | | |
| | | | | | | |
| Counted cells (total) | | | | | | |
| Calculated cells per inch$^2$ (cpi) | | | | | | |
| | | | | | | |
| **If laboratory tested:** | | | | | | |
| Active Material Loading (g/L) | | | | | | |
| Ratio | | | | | | |
| | | | | | | |
| Inspector: | | | | | | |
| Date: | | | | | | |

<u>**Appendix B: Emissions Mitigation Project**</u>

I.    <u>**General Provisions**</u>

1. Within two (2) years from the Effective Date of the Consent Decree, TSC shall achieve the Required Emissions Mitigation set forth in Paragraph 14 of the Consent Decree through the implementation of the Emissions Mitigation Project set forth below.

2. Beginning thirty (30) days from the date TSC commences the Emissions Mitigation Project, and thereafter in each Semi-Annual Progress Report required under Section VI (Reporting Requirements) of the Consent Decree, TSC shall submit to EPA the following information in writing:

   a. A statement of the results of the Emissions Mitigation Project during the reporting period and cumulatively since commencement, including the number of tons of pollutants offset as a result of thereof, including all supporting documentation and calculations; and

   b. A description of any problems encountered in implementing or completing the Emissions Mitigation Project and the solutions thereto.

3. In the first Semi-Annual Progress Report submitted pursuant to Section VI (Reporting Requirements) of the Consent Decree, TSC shall certify to the truth and accuracy of each of the following:

   a. that TSC is not required to perform the Emissions Mitigation Project by any federal, state, or local law or regulation or by any agreement, grant, or as injunctive relief awarded in any other action in any forum;

   b. that the Emissions Mitigation Project is not a project that TSC was planning or intending to construct, perform, or implement other than in settlement of the claims

Page 1

resolved in the Consent Decree;

    c.  that TSC has not received and will not receive credit for the Emissions Mitigation Project in any other enforcement action; and

    d.  that TSC will not receive any reimbursement for any portion of the Emissions Mitigation Project from any person.

4.  TSC shall not use or rely on the emission reductions generated as part of any project undertaken pursuant to this Consent Decree in any federal or state emission averaging, banking, trading, or other emission compliance program, unless such credits otherwise conform to the requirements of such other emission compliance program and are generated after TSC's completion of the entire required Emissions Mitigation, as required by Paragraph 14 of the Consent Decree.

5.  Any final reports submitted to EPA pursuant to 40 C.F.R. § 1054.730 must state that the credits generated through the Emissions Mitigation Project will be retired and permanently removed from any account affiliated with TSC.

6.  TSC may use Suppliers, contractors, or consultants in planning and implementing the Emissions Mitigation Project, but TSC remains responsible for achieving the Required Emissions Mitigation.

## II.   Emissions Mitigation Project

### Wood-Burning Appliance Changeout and Retrofit Project

7.   Under the Wood-Burning Appliance Changeout and Retrofit Project ("WBA Project"), TSC
     shall retrofit or change-out 22 wood-burning appliances in accordance with the requirements
     of this Appendix B to the Consent Decree.

8.   Prior to commencing the WBA Project Plan, TSC shall identify a state, local, or tribal agency
     or non-profit organization ("Implementing Entity") to aid in the implementation of the WBA
     Project.  TSC shall identify an Implementing Entity that has prior experience implementing a
     wood burning appliance change-out or retrofit program in the United States and that, at the
     time the agreement required by Paragraph 9, below, is executed, has the staff expertise and
     organizational capacity to implement the WBA Project.  A list of potential Implementing
     Entities is available at: http://www.epa.gov/burnwise/pdfs/changeout-retrofit-locations.pdf.

9.   Within 60 Days of the Effective Date of the Consent Decree, TSC shall enter into an
     agreement with the Implementing Entity.  The agreement required by this Paragraph shall
     include all of the elements described in Paragraph 10, and shall include: a) a description of
     the incentives (e.g., rebates for EPA-certified wood burning appliances) that will be provided
     to homeowners to retrofit, replace, or upgrade inefficient, higher polluting wood-burning
     appliances (e.g. wood stoves that are not EPA-certified, old technology outdoor wood-fired
     hydronic heaters) with EPA-certified wood stoves or cleaner burning, more energy efficient
     retrofits/appliances (e.g. Energy Star natural gas furnaces, wood pellet, gas, or propane
     stoves); and b) a description of how the WBA Project meets the requirements of this
     Appendix B.  TSC shall remain responsible for compliance with all terms of this Appendix
     B, including but not limited to the requirements of Paragraph 10, below, regardless of the

Page 3

terms of the agreement TSC makes with the Implementing Entity to implement the Project and regardless of the cost of each replacement or retrofit.

10. TSC shall:

    a.  Ensure that the Implementing Entity consults with the EPA's Residential Wood Smoke Reduction Team and implements the WBA Project consistent with the materials available on the EPA's Burn Wise website at http://www.epa.gov/burnwise and with the requirements of this Consent Decree;

    b.  Provide to the Implementing Entity the funding necessary to implement the Project within thirty (30) Days after execution of the agreement with the Implementing Entity;

    c.  Ensure that the Project is implemented in any area of the United States except Minnesota and California.  The 22 change-outs/retrofits required by this Consent Decree are sufficient to achieve the Required Emissions Mitigation based on the average wood burn rate in these areas.

    d.  Ensure that all change-outs/retrofits are completed within two years of the Effective Date of the Consent Decree;

    e.  Ensure that all of the old wood burning stoves/appliances are disposed of properly or recycled such that the stoves/appliances cannot be resold or reused;

    f.  Ensure that all new wood burning stoves/cleaner burning appliances are installed by a certified or equivalent professionals in conformity with all applicable manufacturers' installation instructions, state laws and local codes; and

    g.  Ensure that EPA's Burn Wise information regarding the benefits of cleaner burning heating appliances, use of dry, seasoned wood, and proper stove operation is provided

to each person receiving the change-out/retrofit. EPA's Burn Wise information is available on EPA's website at http://www.epa.gov/burnwise/burnwisekit.html.

11. In the next semi-Annual Progress Report required under Section VI (Reporting Requirements) of the Consent Decree after TSC enters into the agreement required by Paragraph 9 of this Appendix B, TSC shall include a written description of the Implementing Entity's prior experience implementing a wood burning appliance replacement or retrofit program, staff expertise, and organizational capacity, and copy of the final executed agreement between TSC and the Implementing Entity, including evidence of the date of execution.

12. In the next semi-Annual Progress Report required under Section VI (Reporting Requirements) of the Consent Decree after the WBA Project is complete, TSC shall include the following information, which, as applicable, may be based on information provided by the Implementing Entity:

    a.  A summary description of the project as implemented;

    b.  The number and type (e.g., EPA-certified wood stove, gas stove) of cleaner burning appliances installed;

    c.  The street address of the locations in which each of the appliances was installed;

    d.  A copy of TSC's payments (e.g., cancelled checks, wire transfer confirmations, etc.) to the Implementing Entity showing that TSC funded the Project, and the date on which funds were provided to the Implementing Entity;

    e.  Documentation (e.g., before and after digital images, disposal or recycling receipts, etc.) that new EPA-certified wood stoves, retrofits, and/or appliances replaced the old, non-EPA-certified wood stoves, and that the older stoves were disposed of

properly or recycled such that they can never be resold or reused.

## APPENDIX C: Emissions Testing Guidelines

Emissions testing required to be conducted under this Consent Decree shall be performed in accordance with EPA regulations and by an independent testing laboratory, pre-approved by EPA pursuant to Paragraph 15 the Consent Decree, and in accordance with a detailed written test plan that includes the following criteria:

1) All emissions testing will be low-hour testing conducted in accordance with the guidelines set forth in 40 C.F.R. Parts 90, 1051, 1054, and 1068. For equipment engines, this means that the engines must be removed from the equipment during testing, unless the engine was certified with a special test procedure that allows testing of the engine while it is in the equipment.

2) Test records regarding the identity of each Sample and, if applicable, the equipment in which the engine is installed, will be created and maintained. These records will include, at a minimum, any identifying numbers on the equipment and/or engine, photographs of the vehicle or equipment showing the model name and number, photographs of the engine, and photographs of any emission control label present on the vehicle or engine. For vehicles, this information will also include the vehicle identification number.

3) Test records regarding the nature of any maintenance, modification or adjustment performed on the Sample will be created and maintained.

4) The original Certificate test data may not be used to satisfy the requirements of emissions testing required to be conducted in accordance with this Appendix C.

5) The deterioration factors (DFs) will be applied in accordance with the applicable regulations to determine conformity with applicable emissions limits. If TSC believes the DFs were calculated incorrectly, TSC may submit for EPA approval a proposed alternative DF. TSC's proposal shall demonstrate the manner in which the original DF was calculated incorrectly and that TSC's proposed alternative DF has been calculated in accordance with applicable EPA regulations.

6) A detailed description of:
    a) the equipment that will be used to conduct the emissions test and collect emissions test data;
    b) the procedures that will be used to prepare engines for testing, including the procedure to determine when emissions are stabilized;
    c) the procedures that will be used to record and report the conduct of the emissions testing and the emissions test results, and engine power and speed, in each test mode; and
    d) unless the testing laboratory determines that an engine's air-fuel ratio is not adjustable and obtains EPA's written concurrence on this determination, the procedures that will be used if the air-fuel ratio of a subject test engine/vehicle can be adjusted. Specifically, emissions tests shall be conducted: one test with the mixture setting unadjusted, i.e., as received by the testing laboratory, in addition to tests at maximum lean and rich conditions (to include air screw and carburetor jet adjustments, as

applicable, and consistent with 40 CFR §§ 1051.115(d)(2)-(3), 90.112, and 1054.115(b)). For recreational vehicles, the testing laboratory will test at the recommended carburetor idle air-fuel mixture screw setting, jet size, and needle configuration if the relevant certificate application includes a jetting chart (*see* 40 CFR § 1051.115(d)(3), or at the rich and lean limits as defined at 40 CFR § 1051.115(d)(2). For engines contained in equipment (not including products certified as recreational vehicles), adjustable parameters (e.g., the air-fuel mixture screw or jet needle clip) are defined at 40 C.F.R. §§ 90.112 and 1054.115(b).

7) Specifies that the test vehicles/engines shall be retained by TSC or the independent laboratory for 120 days after testing.